# EXHIBIT 1

1

ANTHONY J. ORSHANSKY, Cal. Bar No. 199364
anthony@counselonegroup.com

2

ALEXANDRIA KACHADOORIAN, Cal. Bar No. 240601
alexandria@counselonegroup.com

3

JUSTIN KACHADOORIAN, Cal. Bar No. 260356
justin@counselonegroup.com

4

COUNSELONE, P.C.
9465 Wilshire Boulevard, Suite 300

5

Beverly Hills, California 90212
Telephone: (310) 277-9945

6

Facsimile: (424) 277-3727

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

8/7/2025 12:42:18 PM

Clerk of the Superior Court
By M. Estrada      ,Deputy Clerk

7

Attorneys for Plaintiff LAWRENCE KLEIN

8

SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

FOR THE COUNTY OF SAN DIEGO

10

11

12

LAWRENCE KLEIN,

Plaintiff,

13

14

v.

15

MICROSOFT CORPORATION,
and DOES 1 to 50, inclusive,

16

Defendants.

17

18

19

20

21

22

23

24

25

Case No.  **25CU041477C**

COMPLAINT FOR PUBLIC INJUNCTIVE
RELIEF:

(1) Violation of California Business &
    Professions Code section 17200, *et
    seq.* (Unfair Competition Law) – Public
    Injunctive Relief Only

(2) Violation of California Business &
    Professions Code section 17500, *et
    seq.* (False Advertising Law) – Public
    Injunctive Relief Only

(3) Violation of California's Consumers Legal
    Remedies Act, California Civil Code
    section 1750, *et seq.*—Public Injunctive
    Relief Only

(4) Declaratory and Injunctive Relief –Public
    Injunctive Relief Only

26

27

28

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

Plaintiff LAWRENCE KLEIN (hereinafter, "Plaintiff") complains of Defendant MICROSOFT CORPORATION ("Defendant" or "Microsoft"), and Does 1 to 50, inclusive, as follows:

## NATURE OF ACTION

1. Plaintiff brings this action against Defendant Microsoft Corporation ("Microsoft") seeking public injunctive relief under California's Unfair Competition Law ("UCL"), Business & Professions Code § 17200, *et seq.*; the California Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750, *et seq.*; and the False Advertising Law ("FAL"), Business & Professions Code § 17500, *et seq.*

2. Less than a year ago Microsoft announced that it would cease providing support for Windows 10 devices as of October 14, 2025. Microsoft made this decision even though Windows 10 users represented more than half of the Windows operating system (OS) market share and a substantial number of devices in use today—estimated at around 240 million devices—lack the hardware specifications to upgrade to Windows 11. These consumers and businesses must now buy new devices capable of running Windows 11 or pay unanticipated sums for extended support of Windows 10, which is priced at $30 per year for individuals and $61 per device for businesses in the first year, increasing to $244 by the third year. Neither Microsoft nor its original equipment manufacturers (OEMs) disclosed to customers the potential additional costs or the consequences of Microsoft's decision to end support for all operating system versions compatible with the device."

3. Microsoft's decision to discontinue support for Windows 10 while most of its consumer base was still using it was part of the company's larger strategy to force its customers to purchase new devices optimized to run Microsoft's suite of generative artificial intelligence (AI) software such as Copilot, which comes bundled with Windows 11 by default. To run optimally, Microsoft's AI must offload work from the cloud locally to neural processing units (NPU) installed in newer devices. Windows 10 devices generally lack NPUs. Microsoft's stratagem was to use its dominant position in the OS market to achieve a dominant position in the market for generative AI. It did this by forcing customers to purchase new devices (or face financial repercussions if they did not) and running Windows 11, thereby ensuring a large user base that would access this product by

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

default.  This conduct had the inevitable effect of decreasing trade in generative AI products of Microsoft's competitors, increasing the barriers to entry in the generative AI market, and dampening innovation and consumer choice.

4. Sadly, this tactic in Microsoft's attempt to monopolize the generative AI market has wide-reaching consequences beyond the race to achieve market dominance.  With only three months until support ends for Windows 10, it is likely that many millions of users will not buy new devices or pay for extended support.  These users—some of whom are businesses storing sensitive consumer data—will be at a heightened risk of a cyberattack or other data security incident, a reality of which Microsoft is well aware.  In other words, Microsoft's long-term business strategy to secure market dominance will have the effect of jeopardizing data security not only of Microsoft's customers but also of persons who may not use Microsoft's products at all.

5. To remedy this state of affairs, Plaintiff seeks injunctive relief requiring Microsoft to continue providing support for Windows 10 without additional fees or conditions until the number of devices running the operating system falls below a reasonable threshold, thereby ensuring that consumers and businesses are not unfairly pressured into unnecessary expenditures and cybersecurity risks, and requiring Microsoft to provide clear disclosures to consumers purchasing a Windows OS license, whether directly through Microsoft or through OEMs when customers purchase their devices, clearly disclosing the length of support for Windows compatibility with such devices and the consequences of Microsoft's decisions to cease providing support.

## **PARTIES**

6. Defendant Microsoft Corporation is a multinational technology company that operates in California.

7. At all times mentioned herein Plaintiff was and is a resident of the State of California.

8. The true names and capacities, whether individual, corporate, associate, or whatever else, of the defendants sued herein as Does 1 to 50, inclusive, are currently unknown to Plaintiff, who therefore sues these defendants by such fictitious names under Code of Civil Procedure § 474.  Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as Does is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiff will

2

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

seek leave to amend this Complaint to reflect the true names and capacities of the defendants designated herein as Does when their identities become known.

9. Plaintiff is informed and believes and thereon alleges that each defendant acted in all respects pertinent to this action as the employee, agent, partner, alter-ego, and/or joint venturer of the other defendants; that defendants carried out a joint scheme, business plan, or policy in all respects pertinent hereto; and that the acts of each defendant are legally attributable to the other defendants.

10. Venue is proper in this judicial district pursuant to Code of Civil Procedure § 395.5 because the obligations giving rise to liability occurred in the County of San Diego, State of California.

## FACTUAL ALLEGATIONS

11. Microsoft is a software manufacturer and creator of the Windows operating system (OS), which it develops and distributes worldwide, including in California.

12. Windows is the most used operating system for desktops and laptops, holding about 71% of the market share.

13. Windows comes pre-installed on many laptops, desktops, and tablets from manufacturers like Dell, HP, Lenovo, and ASUS.  These companies license the Windows operating system from Microsoft under Original Equipment Manufacturer (OEM) agreements, ensuring users have a fully functional OS upon purchase.

### *Microsoft's Premature End of Windows 10 Support*

14. Windows 10 is the ninth major iteration of the Windows operating system, following Windows 8.1.

15. Windows 10 remains widely used, with estimates indicating that as of April 2025, approximately 52.94% of desktop Windows users still rely on Windows 10.

16. Late last year Microsoft announced that Windows 10 support will officially end on October 14, 2025.  Just this year, as recently as April 2025, Microsoft provided the following notice to consumers booting up their devices:

**Image 1**: Notice of forced obsolescence presented to Windows users upon boot up in April 2025. Users with older devices that cannot upgrade to Windows 11 have reported seeing advertisements like the one above when booting.

17. After October 14, 2025, the operating system will no longer receive security updates, technical assistance, or software patches.

18. Although Microsoft is encouraging consumers to upgrade to Windows 11, many devices currently running Windows 10 lack the hardware requirements to make the transition such as Intel 8th Gen Coffee Lake or Zen 2 CPUs and up, TPM 2.0 (Trusted Platform Module) support, 4GB of RAM, and 64GB of storage.  This is a departure from the hardware requirements for previous versions of Windows.[1]

19. Many individuals and businesses purchased or built devices with the expectation that they would be able to upgrade to a newer Windows operating system without purchasing new

---

[1] Tom Warren, "Windows 11 will leave millions of PCs behind, and Microsoft is struggling to explain why," *Verge,* Jun. 29, 2021, available at https://www.theverge.com/2021/6/29/22555371/microsoft-windows-11-cpu-support-hardware-requirements-tpm-response

4

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

hardware.  In fact, unbeknownst to them, Microsoft was already making plans to update to Windows 11 while devices that continued to run Windows 10 and that were incapable of the upgrade were being sold.

20. In a bid to induce customers to upgrade their devices, Microsoft actively blocked Windows 10 PCs released before late 2017 from receiving the Windows 11 update, forcing users to buy new laptops or desktops if they want the newest Microsoft OS.[2]  Microsoft has actively sought to prevent workarounds to move ineligible hardware to Windows 11.

21. Microsoft itself has warned that approximately 240 million devices will be affected by the end of Windows 10 support, many of which cannot be upgraded to Windows 11.  The worldwide numbers may be much larger.

22. At this writing close to half of Windows users are still running Windows 10.  This number includes enterprise users that hold customer data.  In fact, only 41 percent of endpoints in healthcare are running Windows 11 and 19 percent of endpoints will need to be replaced entirely.[3]

23. The decision to force hardware upgrades will have the effect of "bricking" millions of devices, creating substantial electronic waste (e-waste) that can have profound environmental consequences, as these discarded devices can release hazardous materials like lead, mercury, and cadmium into the environment.[4]  "The end result will be an estimated 240 million PCs becoming e-waste, which is around a fifth of all Windows 10 devices. … If these were all folded laptops, stacked one on top of another, they would make a pile 600km taller than the moon."[5]

24. In its announcements about the end of support for Windows 10, Microsoft does not inform customers about options other than discarding their Windows 10 devices—like switching operating systems entirely.

[2] Michael Kan, "More PCs Can Upgrade to Windows 11 After Microsoft Drops 'Compatibility Hold,'" *PC Magazine*, Apr. 15, 2024, available at https://www.pcmag.com/news/more-pcs-can-upgrade-to-windows-11-after-microsoft-drops-compatibility

[3] Richard Speed, "Critics blast Microsoft's limited reprieve for those stuck on Windows 10," *The Register*, Jul. 1, 2025, available at https://www.theregister.com/AMP/2025/07/01/windows_10_updates_criticism/

[4] "Electronic Waste (E-Waste)," World Health Organization, Oct. 1, 2024, available at https://www.who.int/news-room/fact-sheets/detail/electronic-waste-%28e-waste%29;

[5] Darren Allen, "Windows 10 support ending could be an environmental disaster that puts 240 million PCs on the scrapheap," *TechRadar*, Dec. 21, 2023, available at https://www.techradar.com/computing/windows/windows-10-support-ending-could-be-an-environmental-disaster-that-puts-240-million-pcs-on-the-scrapheap (internal quotation marks omitted).

5

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

25. Furthermore, Windows 11 includes Microsoft's new generative AI software, including Copilot.[6]  Microsoft also has developed Copilot+PCs, which is a new category of AI-powered Windows PCs.  By forcing users to upgrade to Windows 11 and especially purchase new AI-powered Windows devices, Microsoft ensures a built-in market for its new software, thereby gaining an edge over competitors.

26.    Microsoft is explicit about this objective, often calling 2025 "the year of the Windows 11 PC refresh," a campaign to get consumers to ditch their older but perfectly functional Windows 10 devices and purchase Copilot+PCs capable of running Microsoft's AI software.

### *Historical Precedent for Windows Phase-Out Timing*

27. Unlike previous phase-outs, Windows 10 is being discontinued just 4 years after Windows 11 launched, even though over 50% of Windows users still rely on Windows 10.

28. Microsoft has typically provided longer transition periods for older operating systems:

- Windows XP support ended in 2014, 7 years after Windows Vista launched.

- Windows Vista support ended in 2017, 8 years after Windows 7 launched.

- Windows 7 support ended in 2020, 8 years after Windows 8 launched.

- Windows 8 support ended in 2023, 8 years after Windows 10 launched.

29.  Moreover, each time Microsoft announced that it would end support for an operating system, the number of active users had declined to a small overall percentage of the operating systems in use.

30.  In addition, previous OS upgrades did not require users to upgrade their hardware. For example, most devices that ran Windows 7 and 8 could simply upgrade to Windows 10.

31.  The upgrade to Windows 11 is different.  Windows 10 users are being forced into a transition period that is approximately half as long as prior phase-outs, despite significantly higher adoption rates.

---

[6] Generative AI uses large language models trained on vast datasets to create new content—text, code, or images—based on natural language prompts. Its adaptability enables human-like outputs across various domains, supporting users with tasks such as storytelling, code generation, and travel planning through a single, easy-to-use interface. Governments, businesses, and individuals leverage generative AI to tackle complex problems, generate content, and automate diverse processes efficiently.

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

32. Moreover, estimates suggest that around 240 million Windows 10 devices may be incompatible with Windows 11, thus requiring a hardware upgrade or exposing users and others to risk.[7]  The number of incompatible devices worldwide is even larger, closer to 500 million.[8]

33. Windows 11 is wildly unpopular, and absent the forced obsolescence, many Windows users simply would not upgrade to Windows 11.  Windows 11 does not present many enticing features that warrant an upgrade, and consumers do not find the new interface appealing.[9]  Microsoft has been unwilling to take consumer preference into account when designing or updating Windows 11 because as the dominant firm in the OS market it does not have to.

34. "Microsoft and its hardware partners are facing a similar problem with AI PCs. For many users, there remains no application that demands the new hardware.  Hence, they are unlikely to upgrade before the next hardware refresh, regardless of how loudly the company promotes Copilot."[10]

35. This sluggish demand for Windows 11 presents a unique challenge to Microsoft in the race to corner the AI market.  Without the forced obsolescence of Windows 10 many users simply would not use Microsoft's native AI software and would turn to Microsoft's competitors for alterative options.

36. Microsoft, either directly or through OEMs, did not provide adequate disclosures about the end of support for Windows 10.  In fact, Microsoft did not announce firm end-of-support date until the end of 2024.  Neither the end-of-support date nor the consequences of ending support for Windows 10 (e.g., the forced upgrade to new devices) were disclosed to consumers when they downloaded or updated their OS.

### Cybersecurity Risks and Economic Harm

37.  Once Microsoft ends support for Windows 10, the OS will no longer receive security patches, bug fixes, or technical support.  Microsoft knows this: "If your OS isn't getting patched,

---

[7] Zak Doffman, "Microsoft Warns 240 Million Windows Users—Stop Using Your PC," *Forbes*, Apr. 5, 2025, available at https://www.forbes.com/sites/zakdoffman/2025/04/05/microsoft-warns-240-million-windows-users-stop-using-your-pc/

[8] Ed Bott, "Microsoft still has a massive Windows 10 problem - and there's no easy way out," ZDNet, available at https://www.zdnet.com/article/microsoft-still-has-a-massive-windows-10-problem-and-theres-no-easy-way-out/

[9] Richard Speed, "Windows 11 poised to beat 10, mostly because it has to," *The Register*, Apr. 4, 2025, available at https://www.theregister.com/2025/04/04/windows_11_market_share/

[10] *Ibid.*

it's particularly susceptible to these attacks. This could lead to data breaches, identity theft, and other serious consequences.  Not fun."[11]

38. Unsupported systems are prime targets for cyberattacks, as hackers exploit unpatched vulnerabilities.  Even a single hacker can exploit weakness and access sensitive data.[12] Just a few weeks ago, Microsoft experienced a hack affecting about 100 organizations—including the Department of Homeland Security headquarters, several of its component agencies and the Department of Health and Human Services.[13]

39.  Businesses relying on Windows 10 may face compliance issues with security regulations such as HIPAA, PCI-DSS, and GDPR, exposing consumers to financial fraud, identity theft, and data breaches.

40.  Even individuals who do not use Windows or own a computer are at risk of having their personal data compromised, as businesses that store customer information on Windows 10 systems will be increasingly vulnerable to cyberattacks.

41. Cybersecurity incidents cost the U.S. economy between $57 billion and $109 billion annually, and the premature discontinuation of Windows 10 support will likely exacerbate these financial losses.[14]

### *Microsoft's Incentives for Ending Support for Windows 10 –*
### *and the Costs to Consumers and Competition*

42. Recognizing that many individuals and businesses may be unable to transition to Windows 11 devices before October 2025, Microsoft has announced that it will offer extended support for $30 per year for individuals and $61 per device for businesses in the first year, increasing

---

[11] Microsoft, "Upgrade to Windows 11 to help keep your PC secure," Mar. 19, 2025, available at https://www.microsoft.com/en-us/windows/learning-center/upgrade-to-keep-your-pc-secure
[12] James Pearson and Raphael Satter, "Microsoft server hack about 100 organizations, researchers say," *Reuters*, Jul. 21, 2025, available at https://www.reuters.com/sustainability/boards-policy-regulation/microsoft-server-hack-hit-about-100-organizations-researchers-say-2025-07-21/ (noting that the breach may have been the work of a single hacker).
[13] Margaret Brennan, *et al.*, "DHS and HHS among federal agencies hacked in Microsoft Sharepoint breach," *CBS News*, Jul. 24, 2025, available at https://www.cbsnews.com/news/microsoft-sharepoint-breach-dhs-hhs/
[14] "The Cost of Malicious Activity to the U.S. Economy," The Council of Economic Advisors, Feb. 2018, p. 1, available at https://trumpwhitehouse.archives.gov/articles/cea-report-cost-malicious-cyber-activity-u-s-economy/

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

to $244 by the third year.[15]  In addition, this paid support provides only security updates, not new features or bug fixes.

43. Thus, Microsoft has put individuals and businesses in the position of choosing whether to expend more money on new devices or spend additional sum propping up their obsolescent devices.

44. The costs to businesses resulting from the termination of support for Windows 10 extend well beyond hardware replacement, which alone may be substantial. Numerous business-critical systems—including point-of-sale (POS) terminals and computer numerical control (CNC) machines—operate on custom software developed specifically for the Windows 10 operating environment. Businesses routinely invest significant sums, often in the millions of dollars, to procure and maintain such bespoke software. Once support for Windows 10 ceases, these programs may no longer function reliably or securely, particularly where they depend on Windows 10-specific drivers, libraries, or APIs. In such cases, businesses may be compelled to commission new software or replace existing hardware that cannot accommodate updated operating systems. These transitions may impose considerable costs, including expenditures for new devices, software development, systems integration, and personnel training, as well as losses associated with operational downtime. Businesses that are unwilling or unable to undertake such upgrades may opt to continue using unsupported Windows 10 systems, thereby exposing themselves to heightened cybersecurity risks, including data breaches, ransomware attacks, and other forms of system compromise.

45. Microsoft also stands to financially benefit from ending support for Windows 10. Microsoft sells its own Surface devices, which run Windows and generate hardware revenue.  In fact, the image of blue wavy lines that it presented on the laptop next to the notice of forced obsolescence in Image 1 above is the official Windows 11 interface logo,[16] thus essentially functioning as an advertisement for users to upgrade their machines.

---

[15] Last month, in response to the continued lackluster Windows 11 uptake, Microsoft has stated that it will provide security updates to users who agree to use Windows Backup, which backs up settings to Microsoft's cloud platform OneDrive.  The idea is to make customers' transition to a Windows 11 PC easier once it actually occurs.  In this way, it is yet another advertisement for Windows 11 PCs and an attempt to further entrench consumers into the Windows ecosystem.  The enrollment notification states, "Back up your PC Settings. Save your settings, apps, and credentials so you can move to your new Windows 11 PC."  Moreover, users only get about 5 GB of OneDrive storage and must pay for additional storage.

[16] https://news.microsoft.com/june-24-2021/

9

46. Microsoft enters into contracts with major computer manufacturers such as Dell, HP, Lenovo, Asus, and Acer, which pre-install Windows on their devices as authorized Original Equipment Manufacturer (OEM) distributors.  These OEM agreements generate substantial revenue for Microsoft.   While exact financial details are not publicly disclosed, Microsoft's Windows segment generated approximately $25 billion in revenue in 2022, with a significant portion coming from OEM sales.[17]

47. By phasing out Windows 10 prematurely, Microsoft incentivizes consumers and businesses to purchase new devices, either directly from Microsoft or through OEM partners, further boosting its revenue.

48. Moreover, Microsoft has invested billions of dollars developing its AI software, Copilot, including to obtain exclusive access to OpenAI's CPT-3 language model.

49. Microsoft's Azure was the exclusive cloud provider for OpenAI workloads.  Hence, Microsoft controlled the compute layer powering its models.  That meant any developer, enterprise, or consumer using OpenAI's API was ultimately routed through Azure infrastructure.

50. By locking OpenAI's workloads to Azure, Microsoft effectively denied rival cloud providers (like AWS or Google Cloud) access to the most commercially valuable AI models.  Microsoft could bundle OpenAI-powered features into Windows and Office at no marginal cost, while rivals had to pay for API access and cloud hosting.  This allowed Microsoft to subsidize AI features, undercut competitors, and reinforce its ecosystem dominance.

51. Microsoft also partnered with major hardware manufacturers like Acer, ASUS, Dell, HP, Lenovo, and Samsung to develop Copilot+PCs.  These agreements ensured that the new AI-powered devices met Microsoft's specifications, including Neural Processing Units (NPUs) for enhanced AI performance.  For Copilot to operate optimally, users' devices must be upgraded to Windows 11 hardware requirements.

52. As a result Microsoft has a stake in the success of this hardware, the sale of which not only generates direct profits through OEM agreements but also ensures a consumer base for its AI software.  This is an important component in the nascent AI market.  The generative AI market

---

[17] Kamil Franek, "Microsoft Revenue Breakdown by Product, Segment and Country," available at https://www.kamilfranek.com/microsoft-revenue-breakdown/

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

benefits from strong network effects: as more people use a platform, its value grows and attracts even more users. Developers add specialized applications via APIs, making the platform increasingly useful. User interactions further train generative AI systems, resulting in continuous improvement and user growth.

53. In addition to the costs associated with acquiring, programming, and operating generative AI hardware and training models, often requiring personnel from a limited talent pool, there are also barriers to entry for new participants in the market. By forcing its customers to switch to Windows 11 with its built-in AI software, Microsoft is gaining access to a massive userbase—approximately 1.6 billion devices worldwide[18]—and diminishing the incentive for these customers to switch to competing AI software, especially where such alternatives come at a cost.

54. Further, discontinuing support for Windows 10 coupled with the unprecedented obsolescence of Windows 10 devices ensures consumers will be able to use Microsoft's full-fledged Copilot functionality, and Microsoft has a captive audience for this product because it is integrated into Windows 11 and immediately accessible to users running the new OS.

55. Microsoft actively promotes Copilot to Windows 11 users. Copilot is integrated into Windows 11. Microsoft has also placed Copilot branding within Windows 11 settings, such as in the taskbar and system menus. By default, Copilot appears on the task bar in Windows 11. Some users have noted that Copilot Pro ads appear in Windows 11 Settings, though there is not currently an option to remove them. Further, advertisements for Copilot pop up from the task bar, sometimes at inopportune times, and Microsoft actively promotes its AI features in apps like Word.

56. By embedding Copilot into Windows, Microsoft ensures that millions of users encounter its AI assistant by default, reducing friction in adoption compared to third-party AI tools that require separate downloads or subscriptions. The competitive implications are significant. Consumers do not need to seek out or install Copilot because it is already integrated into the OS. Microsoft can also actively promote Copilot within Windows 11 settings, making it a central AI experience. Further, Copilot+PCs leverage Neural Processing Units (NPUs) to enhance AI performance, further differentiating Microsoft's offering from competitors.

---

[18] "Microsoft Windows Statistics and Facts (2025)," *Sci-Tech Today*, https://www.sci-tech-today.com/stats/microsoft-windows-statistics/

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

57. In contrast, other AI companies, like OpenAI (ChatGPT), Google (Gemini), and Anthropic (Claude), rely on web-based or app-based distribution, meaning they must convince users to opt in rather than being the default AI assistant.

58. All this puts Microsoft at a competitive advantage in the AI market against competitors without a captive audience. Microsoft is abusing its near monopoly in the operating system market to force consumers to purchase new devices so that it can secure a dominant position in the AI sector.

59. The strategy appears to be working. As of the end of 2023, OpenAI and Microsoft together controlled about 69% of the global generative AI market, while the next largest competitor (Amazon Web Services) held only 8%.[19]

60. The closer we get to the end of support for Windows 10, the more transparent Microsoft has become about using the occasion to foist AI-optimized PCs on customers. In one advertisement appearing via full-screen pop-up in June 2025, Microsoft states, "With support for Windows 10 ending on October 14, 2025, rest assured we have you covered. … Level up to the new Copilot+PCs."[20]

---

[19] Joaquin Fernandez, "The Leading Generative AI Companies," IOT Analytics, Mar. 4, 2025, available at https://iot-analytics.com/leading-generative-ai-companies/

[20] Mayank Parmar, "As Windows 10 end of support looms, Microsoft says Windows 11 AI is all you need," *Windows Latest*, Jun. 21, 2025, available at https://www.windowslatest.com/2025/06/21/as-windows-10-end-of-support-looms-microsoft-says-windows-11-ai-is-all-you-need/



**Image 2**: Pop-up advertisement appearing on Windows 10 devices in or around June 2025.

61. Microsoft's OEMs have also picked up this theme.  For example, Asus recently issued an advertisement claiming that Copilot is the future of Windows and recommending that users should retire their Windows 10 devices in favor of Copilot+PCs.  After informing readers about the looming end-of-support for Windows 10, Asus continues, "But here's where it gets even better:  with Copilot+PCs, Windows 11 takes the AI experience to a whole new level.  These devices are equipped with an NPU—a dedicated AI processor, specifically designed to handle AI tasks locally, making your experience smoother, faster, and more secure."[21]

62. Riding the wave of consumer demand that Microsoft created by bricking Windows 10 devices, especially in the AI market,[22] Microsoft's market position has catapulted, reaching a record high stock price of $490.11 (as of June 24, 2025).  With a market capitalization of $3.896 trillion, it is one of the world's most valuable companies.

---

[21] Darren Allen, "Can't upgrade your laptop to Windows 11? Asus joins Microsoft's campaign urging you to buy a new Copilot+PC, and I'm not sure that's wise," *Tech Radar*, Jun. 2, 2025, available at https://www.techradar.com/computing/windows/cant-upgrade-your-laptop-to-windows-11-asus-joins-microsofts-campaign-urging-you-to-buy-a-new-copilot-pc-and-im-not-sure-thats-wise

[22] Patrick Seitz, "Microsoft Stock Carves Record High on Agentic AI Leadership," *Investor's Business Daily*, Jun. 24, 2025, available at https://www.investors.com/news/technology/microsoft-stock-record-high-agentic-ai/

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

63. Even though Windows 11 still lags behind worldwide Windows 10 users, Microsoft is reportedly already planning the rollout of Windows 12, which may require further hardware updates to support Microsoft's developing AI capabilities.  If Microsoft continues to rely on its captive audience of Windows users as a built-in market to advance its position in the AI market, the very real possibility arises that Microsoft will limit or even end support on a shorter timeline than previous iterations of the OS and thus require more frequent but unnecessary and expensive hardware upgrades with at best a year's notice to consumers before doing so.  In effect, the public is subsidizing Microsoft's anticompetitive conduct.

64. Plaintiff Klein currently runs Windows 10 on his Asus and Samsung laptops. Plaintiff Klein is unable to update these devices to Windows 11.  As a result, Plaintiff's device will effectively become obsolete in October 2025 when Microsoft ends support for Windows 10.

## **FIRST CAUSE OF ACTION**

### **VIOLATION OF THE CAL. BUS. & PROF. CODE § 17200, *et seq. –Injunctive Relief Only***

65. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

66. California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.  The UCL prohibits any unlawful, unfair, or fraudulent business act or practice. A business practice need only meet one of these three criteria to be considered unfair competition.

67. The UCL defines unfair business competition to include any "unlawful, unfair or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal Bus. & Prof. Code § 17200.

68. A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to affected consumers.

69. Defendant violated the unfair prong of the UCL by, among other things, prematurely ending support for Windows 10 despite its continued widespread use and thereby rendering many

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

older but still functioning devices obsolete and requiring many consumers to incur the cost of purchasing new devices, which benefits Microsoft. Worse, Microsoft recognizes that many users will be unable to upgrade before the end-of-support date in October 2025 and plans on continuing security updates but only to users who pay a fee, where it could simply continue providing such updates to all affected users. Further, as alleged, Microsoft's end-of-support for Windows 10 is occurring considerably sooner than previous OS phase-outs, which deprives consumers of the value of the devices they purchased based on the expectation that support would continue or devices could be updated to a newer version of Windows. Microsoft's business practice is also unfair because Microsoft neither directly nor through distributors clearly discloses to customers at the point of purchase or during software updates the length of time a particular iteration of its operating system will be operational before end-of-support, nor does it disclose the consequences of such end-of-support on consumers' ability to use devices that may not be capable of upgrading to a new version of Windows, such as security vulnerabilities and loss of access to critical functionalities. Microsoft's conduct is also unfair because it violates the spirit if not the letter of state and federal antitrust laws, as discussed hereinbelow.

70. The gravity of the harm to the public caused by these unfair acts and practices far outweighs any justifications or motives offered by Microsoft. By sunsetting software without adequate safeguards or transparency, Microsoft forces consumers into unnecessary expenditures while exposing them to foreseeable security risks. Microsoft's decision to end support for Windows 10 affects not only Microsoft users, but also anyone whose data may be stored on a device running Windows 10. It is a virtual certainty that some users will continue to use Windows 10 devices past the end-of-support date without purchasing additional security updates—a fact that Microsoft is well aware of—thus exposing themselves and others to harm. Microsoft's decision to brick hundreds of millions of devices will also have profound environmental consequences, as alleged hereinabove. Microsoft's anticompetitive conduct will also have the effect of restraining trade, increasing the barriers to entry in the market for generative AI, and ultimately dampen innovation and consumer choice.

///

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

71. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the consuming public.

72. Microsoft's conduct is deceptive, as consumers purchase and rely on Microsoft's software expecting sustained support and functionality, only to discover that planned obsolescence undermines reliability and longevity. Defendant's representations of security and usability fail to disclose material risks associated with forced upgrades, nor does Microsoft inform consumers at the point of purchase or when Windows updates about such planned obsolescence, when it will occur, or describe what it entails, and specifically that consumers' devices may be incapable of upgrading to a new version of Windows and will have to be replaced at the consumers' expense.

73. An unlawful business practice under the UCL is one that violates any other law while being a business practice.

74. Microsoft's conduct is unlawful under the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, and the False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, as alleged herein.

75. Microsoft's actions also violate the Cartwright Act (Business and Professions Code § 16720), Sherman Act (15 U.S.C. §§ 1, 2), and Clayton Act (15 U.S.C. § 14) by using market power in one area to unlawfully require buyers to purchase products or services in another market.

76. Here, Microsoft indisputably has market power in the market for operating systems and it is leveraging that power to force consumers to retire old but still functional devices in order to acquire new devices capable of optimally running Microsoft's native AI software and obtain a competitive edge in the nascent AI sector.

77. Further, Microsoft entered into an arrangement with OpenAI, another dominant firm in the AI market, to develop and promote Microsoft's generative AI capabilities and exclude competitors both from OpenAI's language model and Microsoft's Azure cloud-hosting, which deprived access to other firms to develop and sell successful AI products. Microsoft also entered into contracts with OEMs to include Windows 11 licenses in devices sold to consumers in which Microsoft's generative AI was bundled.

///

16

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

78. The purpose and effect of these business practices is to increase Microsoft's share of the generative AI market, and ultimately to lessen competition in the AI market as a whole, as consumers will simply adopt Microsoft's AI software, which comes bundled as part of Windows 11, as a default rather than seeking out and spending additional money on AI software from Microsoft's competitors.  Other firms in the AI market simply do not have a captive audience to foist their AI software upon by default or the ability to advertise and promote that AI capability to a captive audience the way Microsoft can leverage its OS.  As a result, fewer firms can afford to enter or remain in the market.  In this way Microsoft's conduct as alleged herein forecloses a substantial volume of commerce in the AI market.  It is the expressed policy of the United States Government to prevent just this sort of concentration, specifically in the tech industry.  *Exec. Order No. 14,036, 86 Fed. Reg. 36,987 (July 9, 2021)*.

79. Further, Microsoft's exclusive licensing and integration of OpenAI's advanced language models into its Azure cloud infrastructure effectively forecloses competition in the enterprise generative AI market. By conditioning access to these foundational AI technologies on the use of Microsoft's cloud services, Microsoft has insulated Azure from competitive pressure and impaired the ability of rival platforms (such as Amazon Web Services (AWS) and Google Cloud Platform (GCP)) to offer comparable AI solutions. This strategic foreclosure reinforces Azure's dominance, restrains trade, and constitutes exclusionary conduct in violation of federal antitrust laws.

80. The conduct alleged herein also constitutes attempted monopolization under 15 U.S.C. § 2. Microsoft's EOS for Windows 10 is part of a scheme to monopolize the generative AI market. As alleged, by forcing consumers to retire old devices and acquire Windows 11 devices in which its bundled AI software runs optimally, Microsoft has thwarted consumer choice, forestalled competitors who lack its captive OS audience, and thereby stifled innovation and competition.

81. Microsoft engaged in this conduct to acquire monopoly in the AI sector, as evidenced by its unprecedented move to impose onerous hardware requirements for Windows 11 and blocking attempts by Windows 10 devices to download and run Windows 11 despite the fact that, at the time the decision to end support for Windows 10 was made, well over half of Windows users—literally hundreds of millions of devices worldwide—were still running Windows 10 and were incapable of

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

1  upgrading to Windows 11.

2    82. Microsoft's intent to monopolize is also reflected in Microsoft's multi-billion-dollar

3  investment with OpenAI, a market leader in AI software, which granted Microsoft exclusive access

4  to its language model. By embedding its AI as the default within Windows 11, Microsoft effectively

5  secures an immediate and sizable user base—ensuring frictionless adoption through familiarity and

6  convenience. In contrast, rival offerings must surmount the inertia of user habit, persuading

7  individuals to abandon a system already pre-integrated and readily available. In this way, Microsoft

8  has created a substantial barrier to entry into the AI market.

9    83. By its conduct, Microsoft has engaged in unfair competition and unlawful, unfair, and

10  fraudulent business practices, as described above.

11    84. Microsoft's unfair or deceptive acts or practices occurred repeatedly in Microsoft's trade

12  or business and were unfair to both competitors and consumers.

13    85. As a result of the foregoing unfair, fraudulent, and unlawful business practices, Plaintiff

14  has suffered injury in fact and lost money or property in the form of forced upgrade costs and

15  diminished software functionality.

16    86. Pursuant to California Business & Professions Code § 17203, Plaintiff seeks an order

17  enjoining Microsoft from terminating support for Windows 10 and/or relaxing the hardware

18  requirements for Windows 11, and requiring Microsoft to disclose, in all future advertisements made

19  either by Microsoft or by third-party distributors, the approximate end-of-support date for the

20  Windows operating system purchased with the device and the consequences of such end-of-support

21  for device security and functionality.

22    **SECOND CAUSE OF ACTION**

23    **VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW,**

24    **BUS. & PROF. CODE § 17500, *et seq.* –Injunctive Relief Only**

25    87. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

26    88. The California False Advertising Law ("FAL"), California Business & Professions

27  Code § 17500, *et seq.*, prohibits unfair, deceptive, untrue, or misleading advertising, including but

28  not limited to making misrepresentations or omissions as part of a plan or scheme to induce

18

1    purchases under false pretenses.

2        89. Defendant's advertising was false and misleading to consumers. As alleged above,

3    Microsoft fails to disclose to consumers at the point of purchase or during software updates the

4    length of time a particular iteration of its operating system will be operational before end-of-support,

5    nor does it disclose the consequences of such end-of-support on consumers' ability to use devices

6    that may not be capable of upgrading to a new version of Windows, such as security vulnerabilities

7    and loss of access to critical functionalities.

8        90. Microsoft's failure to adequately disclose software lifecycle limitations and end-of-

9    support risks creating misleading consumer expectations, leading individuals and businesses to rely

10   on Windows versions that Microsoft internally planned to render obsolete.

11       91. To rectify this false and misleading advertising, Plaintiff respectfully requests an order

12   enjoining Microsoft from terminating support for Windows 10 and requiring Microsoft to disclose,

13   in all future advertisements made either by Microsoft or by third-party distributors, the approximate

14   end-of-support date for the Windows operating system purchased with the device and the

15   consequences of such end-of-support for device security and functionality.

16                            **THIRD CAUSE OF ACTION**

17          **VIOLATION OF CALIFORNIA'S CONSUMERS LEGAL REMEDIES ACT,**

18              **CAL. CIVIL CODE § 1750, *et seq.* –Injunctive Relief Only**

19       92. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

20       93. This cause of action is brought pursuant to the Consumers Legal Remedies Act

21   ("CLRA"), California Civil Code § 1750, et seq.

22       94. Plaintiff is a "consumer" within the meaning of Civil Code § 1761(d).

23       95. Microsoft's sale of operating systems and related services constitutes "transactions"

24   within the meaning of Civil Code § 1761(e).

25       96. The software products purchased by Plaintiff are "goods" within the meaning of Civil

26   Code § 1761(a).

27       97. As alleged herein, Microsoft has engaged in unfair methods of competition and unfair

28   and/or deceptive acts or practices against Plaintiff and the general public, in violation of Cal. Civ.

Code §§ 1770(a), including but not limited to:

    a.  § 1770(a)(5): Prohibiting "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have…"—Microsoft misrepresents the longevity and security of its Windows operating systems, failing to disclose planned obsolescence and security vulnerabilities post-support cutoff.

    b.  § 1770(a)(7): Prohibiting "[r]epresenting that goods or services are of a particular standard, quality, or grade…"—Microsoft markets Windows as a secure and reliable operating system while systematically depriving consumers of critical security updates post-end-of-support, rendering older versions vulnerable to cybersecurity threats;

    c.  § 1770(a)(9): Prohibiting "[a]dvertising goods or services with intent not to sell them as advertised…"—Microsoft advertises Windows products as functional, secure, and supported, yet cuts off access to necessary security patches and updates, forcing consumers into costly upgrades;

    d.  § 1770(a)(14): Prohibiting "[r]epresenting that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law…"—Microsoft fails to disclose that consumers purchasing Windows licenses are subject to forced obsolescence policies, limiting long-term usability;

    e.  § 1770(a)(29): Prohibiting "[a]dvertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges…"—Microsoft fails to disclose the true long-term costs associated with planned obsolescence, including forced upgrades and additional purchases required for security compliance.

98. As a result of the foregoing unlawful and deceptive practices, Plaintiff has suffered damage in the form of forced upgrades and unnecessary expenditures, loss of functionality for software and hardware no longer supported, and exposure to cybersecurity vulnerabilities due to withdrawn security protections.

///

20

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

99. Pursuant to California Civil Code § 1780(a)(2), Plaintiff requests that this Court issue an injunction requiring Microsoft to continue providing Windows 10 updates without additional cost or conditions to users and, in all future advertisements, to disclose that support for the Windows operating system purchased with the device is only guaranteed for a certain delineated period of time without additional cost or condition, as well as a disclosure of the potential consequences of such end-of-support for device security and functionality.

## FOURTH CAUSE OF ACTION

### DECLARATORY AND INJUNCTIVE RELIEF

100. Plaintiff hereby incorporates by reference the allegations contained in this Complaint.

101. An actual controversy exists between Plaintiff and Microsoft concerning their respective legal rights and obligations related to Microsoft's planned obsolescence of Windows 10 and deceptive advertising practices for purposes of California Code of Civil Procedure §§ 1060 through 1062.

102. Plaintiff requests that the Court adjudicate and declare that:

    a.  Plaintiff has the right to rely upon truthful advertising regarding the functionality and security of Microsoft's products;

    b.  Microsoft has an obligation to ensure its advertisements, statements, and representations about Windows operating systems are truthful, complete, and not misleading;

    c.  Microsoft's failure to disclose the full consequences of Windows end-of-support, including security vulnerabilities and loss of functionality, constitutes unlawful business practices; and

    d.  Microsoft must clearly and prominently disclose software lifecycle limitations, including how end-of-support policies impact consumer rights and security.

103. Plaintiff further requests that the Court issue related injunctive relief requiring Microsoft to:

    a.  Cease misleading advertising practices regarding the functionality and security of Windows operating systems;

21

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

b.  Provide clear and conspicuous disclosures in all advertising and consumer-facing materials regarding end-of-support dates, security risks, and software obsolescence;

c.  Establish transparent alternatives for security protections, ensuring users are not forced into unnecessary upgrades without mitigation options; and

d.  Continue to provide updates to Windows 10 without additional cost or conditions to affected users and/or relaxing the hardware requirements for Windows 11.

104. Plaintiff further seeks an award of attorneys' fees and costs under California Code of Civil Procedure § 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of the general public, prays as follows:

(a)  A declaration requiring Defendants to comply with the various provisions of the UCL, FAL, and CLRA, as alleged herein;

(b)  An order granting injunctive and declaratory relief to remedy Defendants' violations of California law, including but not limited to an order declaring the parties' respective legal rights and obligations and enjoining Defendants from continuing their unlawful and unfair business practices;

(c)  An order requiring Microsoft to continue providing support for Windows 10 without additional charge or condition to affected users until the number of devices running the OS falls below 10% of total Windows users, based on historical precedent from prior Windows versions and/or relaxing the hardware requirements for Windows 11 to allow existing Windows 10 devices to upgrade to Windows 11;

(d)  An order requiring Microsoft to provide Extended Security Updates for Windows 10 without additional charge or conditions;

(e)  An order requiring Microsoft to implement consumer safeguards ensuring that businesses and individuals are not pressured into unnecessary upgrades that increase cybersecurity risks;

(f)  An order requiring Microsoft's advertisements, or advertisements by Microsoft's OEM partners or the third-party distributors or vendors with which Microsoft does

22

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

business, to disclose clearly and prominently the approximate end-of-support date for the Windows operating system purchased with the device at the time of purchase or, alternatively, to disclose that support is only guaranteed for a certain delineated period of time without additional cost, and to disclose the potential consequences of such end-of-support for device security and functionality;

(g) For an order awarding reasonable attorneys' fees and the costs of suit herein, including an award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5 and California Civil Code § 1780(e);

(h) For such other and further relief as may be deemed necessary or appropriate; and

(i) Leave to amend the Complaint to conform to the evidence produced at trial.

DATED: August 7, 2025                    COUNSELONE, PC

                                         By _____
                                         Anthony J. Orshansky
                                         Alexandria R. Kachadoorian
                                         Justin Kachadoorian

                                         *Attorneys for Plaintiff*

23

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

## DECLARATION OF PLAINTIFF LAWRENCE KLEIN
## PURSUANT TO CAL. CIVIL CODE § 1780(d)

I, Lawrence Klein, declare:

1.    I am over 18 years of age and the named plaintiff in this action. The information supplied herein is based on my own personal knowledge and/or has been supplied by my attorneys or other agents and is therefore provided as required by law.  The information contained herein is true, except as to the matters which were provided by my attorneys or other agents, and, as to those matters, I am informed and believe that they are true. If called upon to testify to the information contained in this Declaration, I could and would competently do so.

2.    I currently reside in San Diego County.  The transactions that are the subject of this lawsuit occurred in San Diego, State of California, where I purchased and/or updated and/or attempted to update my devices' Windows operating system, and where I currently use these devices.

3.    Based on the foregoing facts, I am informed and believe that Microsoft is doing business in San Diego County.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on ___6/26/2025_____.

By: _____
Lawrence Klein

---

24

COMPLAINT FOR PUBLIC INJUNCTIVE RELIEF

# EXHIBIT 2

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Justin Kachadoorian, Esq. (SBN 250356)<br>CounselOne, PC, 9465 Wilshire Blvd., Suite 300, Beverly Hills, CA 90212<br><br>TELEPHONE NO.: (310) 277-9945    FAX NO.: (424) 277-3727<br>EMAIL ADDRESS: justin@counselonegroup.com<br>ATTORNEY FOR *(Name)*: Plaintiff Lawrence Klein | **ELECTRONICALLY FILED**<br>Superior Court of California,<br>County of San Diego<br><br>8/7/2025 12:42:18 PM<br><br>Clerk of the Superior Court<br>By M. Estrada    ,Deputy Clerk |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  SAN DIEGO**
STREET ADDRESS: 330 W. Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego 92101
BRANCH NAME: Central Division

CASE NAME:
Klein v. Microsoft Corporation, et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [x] **Unlimited** (Amount demanded exceeds $35,000) | [ ] **Limited** (Amount demanded is $35,000 or less) | [ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | 25CU041477C |
| | | | JUDGE: | |
| | | | DEPT.: | |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
[x] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)
**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)
**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)
**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)
**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
[ ] Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is  [x] is not    complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. [x] monetary b. [x] nonmonetary; declaratory or injunctive relief  c. [ ] punitive
4. Number of causes of action *(specify)*: four
5. This case [ ] is  [x] is not    a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*
Date: August 7, 2025
Justin Kachadoorian
_____
(TYPE OR PRINT NAME)                    ▶                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. January 1, 2024]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courts.ca.gov

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**CM-010**

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

# EXHIBIT 3

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
MICROSOFT CORPORATION, and DOES 1 to 50, inclusive

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
8/7/2025 12:42:18 PM

Clerk of the Superior Court
By M. Estrada      ,Deputy Clerk

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
LAWRENCE KLEIN

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero o bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Diego Superior Court

Central Division, 330 W. Broadway, San Diego, CA 92101

**CASE NUMBER:**
*(Número del Caso):*  **25CU041477C**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Justin Kachadoorian, Esq., CounselOne, PC, 9465 Wilshire Blvd., Suite 300, Beverly Hills, CA 90212, (310) 277-9945

DATE: **8/8/2025**              Clerk, by _M. Estrada_____ , Deputy
*(Fecha)*                        *(Secretario)*                              *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

# EXHIBIT 4

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO | |
|---|---|
| STREET ADDRESS:      330 W. Broadway | |
| MAILING ADDRESS:    330 W. Broadway | |
| CITY AND ZIP CODE:   San Diego, 92101 | |
| BRANCH NAME:          Central | |
| TELEPHONE NUMBER: 619-450-7071 | |

| PLAINTIFF(S) / PETITIONER(S):   Lawrence Klein |
|---|

| DEFENDANT(S) / RESPONDENT(S):  Microsoft Corporation |
|---|

| KLEIN VS MICROSOFT CORPORATION |
|---|

| NOTICE OF CASE ASSIGNMENT AND CASE MANAGEMENT CONFERENCE (CIVIL) | CASE NUMBER: 25CU041477C |
|---|---|

**CASE ASSIGNED FOR ALL PURPOSES TO:**

Judge: GREGORY W. POLLACK                                    Department: C-71

**COMPLAINT/PETITION FILED:** 08/07/2025

| TYPE OF HEARING SCHEDULED | DATE | TIME | DEPT |
|---|---|---|---|
| Case Management Conference | 01/09/2026 | 1:30 PM | C-71 |

---

**Case Management Conferences (CMCs) may be conducted virtually or in person.** Anyone wishing to appear remotely should visit the "Appearing for Hearings" page for the most current instructions on how to appear for the applicable case-type/department on the court's website at www.sdcourt.ca.gov.

A Case Management Statement (JC Form #CM-110) must be completed by counsel for all parties and by all self-represented litigants and timely filed with the court at least 15 days prior to the initial CMC.  (San Diego Superior Court (SDSC) Local Rules, rule 2.1.9; Cal. Rules of Court, rule 3.725).

All counsel of record and self-represented litigants must appear at the CMC, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of Alternative Dispute Resolution (ADR) options.

It is the duty of each plaintiff (and cross-complainant) to serve a copy of this Notice of Case Assignment and Case Management Conference (SDSC Form #CIV-721) with the complaint (and cross-complaint), the Alternative Dispute Resolution (ADR) Information Form (SDSC Form # CIV-730), a Stipulation to Use Alternative Dispute Resolution (ADR) (SDSC Form # CIV-359), and other documents on all parties to the action as set out in SDSC Local Rules, rule 2.1.5.

<u>TIME FOR SERVICE AND RESPONSE:</u>. The following rules apply to civil cases except for collections cases under California Rules of Court, rule 3.740(a), unlawful detainer actions, proceedings under the Family Code, and other proceedings for which different service requirements are prescribed by law (Cal. Rules of Court, rule 3.110; SDSC Local Rules, rule 2.1.5):
- **Service:** The complaint must be served on all named defendants, and proof of service filed with the court within 60 days after filing the complaint.  An amended complaint adding a defendant must be served on the added defendant and proof of service filed within 30 days after filing of the amended complaint.  A cross-complaint against a party who has appeared in the action must be accompanied by proof of service on that party at the time it is filed.  If it adds a new party, the cross-complaint must be served on all parties and proof of service on the new party must be filed within 30 days of the filing of the cross-complaint.
- **Defendant's appearance:** Unless a special appearance is made, each defendant served must generally appear (as defined in Code of Civ. Proc. § 1014) within 30 days of service of the complaint/cross-complaint.
- **Extensions:** The parties may stipulate without leave of court to one 15-day extension beyond the 30-day time period prescribed for the response after service of the initial complaint (SDSC Local Rules, rule 2.1.6).  If a party fails to serve and file pleadings as required under this rule, and has not obtained an order extending time to serve its pleadings, the court may issue an order to show cause why sanctions shall not be imposed.

<u>JURY FEES:</u> In order to preserve the right to a jury trial, one party for each side demanding a jury trial shall pay an advance jury fee in the amount of one hundred fifty dollars ($150) on or before the date scheduled for the initial case management conference in the action.

<u>COURT REPORTERS:</u> Official Court Reporters are not normally available in civil matters, but may be requested in certain circumstances no later than 10 days before the hearing date.  See SDSC Local Rules, rule 1.2.3 and Policy Regarding Normal Availability and Unavailability of Official Court Reporters (SDSC Form #ADM-317) for further information.

<u>ALTERNATIVE DISPUTE RESOLUTION (ADR):</u> The court discourages any unnecessary delay in civil actions; therefore, continuances are discouraged and timely resolution of all actions, including submitting to any form of ADR is encouraged.  The court encourages and expects the parties to consider using ADR options prior to the CMC.  The use of ADR will be discussed at the CMC.  Prior to the CMC, parties stipulating to the ADR process may file the Stipulation to Use Alternative Dispute Resolution (SDSC Form #CIV-359).

---

# EXHIBIT 5

# NOTICE OF E-FILING REQUIREMENTS
# AND IMAGED DOCUMENTS

Effective April 15, 2021, e-filing is required for attorneys in represented cases in all limited and unlimited civil cases, pursuant to the San Diego Superior Court General Order: In Re Procedures Regarding Electronically Imaged Court Records, Electronic Filing and Access to Electronic Court Records in Civil and Probate Cases. Additionally, you are encouraged to review CIV-409 for a listing of documents that are not eligible for e-filing. E-filing is also encouraged, but not mandated, for self-represented litigants, unless otherwise ordered by the court. All e-filers are required to comply with the e-filing requirements set forth in Electronic Filing Requirements (Civil) (SDSC Form #CIV-409) and Cal. Rules of Court, rules 2.250-2.261.

All Civil cases are assigned to departments that are part of the court's "Imaging Program." This means that original documents filed with the court will be imaged, held for 30 days, and then destroyed, with the exception of those original documents the court is statutorily required to maintain. The electronic copy of the filed document(s) will be the official court record, pursuant to Government Code § 68150.  Thus, original documents should not be attached to pleadings filed with the San Diego Superior Court, unless it is a document for which the law requires an original be filed. Any original documents necessary for a motion hearing or trial shall be lodged in advance of the hearing pursuant to California Rules of Court, rule 3.1302(b).

It is the duty of each plaintiff, cross-complainant, or petitioner to serve a copy of this Notice of Case Assignment and Case Management Conference (Civil) (SDSC Form #CIV-721) with the complaint, cross-complaint, or petition on all parties to the action.

On all pleadings filed after the initial case originating filing, all parties must, to the extent it is feasible to do so, place the words "IMAGED FILE" in all caps immediately under the title of the pleading on all subsequent pleadings filed in the action.

The official court file will be electronic and accessible at one of the kiosks located in the Civil Business Office and may be found on the court's website at www.sdcourt.ca.gov.

# EXHIBIT 6



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION

CASE NUMBER: 25CU041477C                    CASE TITLE: Klein vs Microsoft Corporation

**NOTICE:** All plaintiffs/cross-complainants in a general civil case are required to serve a copy of the following three forms on each defendant/cross-defendant, together with the complaint/cross-complaint:
> (1) this Alternative Dispute Resolution (ADR) Information form (SDSC form #CIV-730),
> (2) the Stipulation to Use Alternative Dispute Resolution (ADR) form (SDSC form #CIV-359), *and*
> (3) the Notice of Case Assignment form (SDSC form #CIV-721).

Most civil disputes are resolved without filing a lawsuit, and most civil lawsuits are resolved without a trial. The courts, community organizations, and private providers offer a variety of Alternative Dispute Resolution (ADR) processes to help people resolve disputes without a trial. The San Diego Superior Court expects that litigants will utilize some form of ADR as a mechanism for case settlement before trial, and it may be beneficial to do this early in the case.

Below is some information about the potential advantages and disadvantages of ADR, the most common types of ADR, and how to find a local ADR program or neutral. A form for agreeing to use ADR is attached (SDSC form #CIV-359).

## Potential Advantages and Disadvantages of ADR
ADR may have a variety of advantages or disadvantages over a trial, depending on the type of ADR process used and the particular case:

| **Potential Advantages** | **Potential Disadvantages** |
|---|---|
| • Saves time | • May take more time and money if ADR does not resolve the dispute |
| • Saves money | |
| • Gives parties more control over the dispute resolution process and outcome | • Procedures to learn about the other side's case (discovery), jury trial, appeal, and other court protections may be limited or unavailable |
| • Preserves or improves relationships | |

## Most Common Types of ADR
You can read more information about these ADR processes and watch videos that demonstrate them on the court's ADR webpage at http://www.sdcourt.ca.gov/adr.

**Mediation:**  A neutral person called a "mediator" helps the parties communicate in an effective and constructive manner so they can try to settle their dispute. The mediator does not decide the outcome, but helps the parties to do so. Mediation is usually confidential, and may be particularly useful when parties want or need to have an ongoing relationship, such as in disputes between family members, neighbors, co-workers, or business partners, or when parties want to discuss non-legal concerns or creative resolutions that could not be ordered at a trial.

**Settlement Conference**:  A judge or another neutral person called a "settlement officer" helps the parties to understand the strengths and weaknesses of their case and to discuss settlement. The judge or settlement officer does not make a decision in the case but helps the parties to negotiate a settlement. Settlement conferences may be particularly helpful when the parties have very different ideas about the likely outcome of a trial and would like an experienced neutral to help guide them toward a resolution.

**Arbitration:**  A neutral person called an "arbitrator" considers arguments and evidence presented by each side and then decides the outcome of the dispute.  Arbitration is less formal than a trial, and the rules of evidence are usually relaxed. If the parties agree to binding arbitration, they waive their right to a trial and agree to accept the arbitrator's decision as final. With nonbinding arbitration, any party may reject the arbitrator's decision and request a trial. Arbitration may be appropriate when the parties want another person to decide the outcome of their dispute but would like to avoid the formality, time, and expense of a trial.

**Other ADR Processes:**  There are several other types of ADR which are not offered through the court but which may be obtained privately, including neutral evaluation, conciliation, fact finding, mini-trials, and summary jury trials. Sometimes parties will try a combination of ADR processes. The important thing is to try to find the type or types of ADR that are most likely to resolve your dispute.  Be sure to learn about the rules of any ADR program and the qualifications of any neutral you are considering, and about their fees.

## Local ADR Programs for Civil Cases

**Mediation:**  The San Diego Superior Court maintains a Civil Mediation Panel of approved mediators who have met certain minimum qualifications and have agreed to charge $150 per hour for each of the first two (2) hours of mediation and their regular hourly rate thereafter in court-referred mediations.

On-line mediator search and selection:  Go to the court's ADR webpage at www.sdcourt.ca.gov/adr and click on the "Mediator Search" to review individual mediator profiles containing detailed information about each mediator including their dispute resolution training, relevant experience, ADR specialty, education and employment history, mediation style, and fees and to submit an on-line Mediator Selection Form (SDSC form #CIV-005).  The Civil Mediation Panel List, the Available Mediator List, individual Mediator Profiles, and Mediator Selection Form (CIV-005) can also be printed from the court's ADR webpage and are available at the Mediation Program Office or Civil Business Office at each court location.

**Settlement Conference:**  The judge may order your case to a mandatory settlement conference, or voluntary settlement conferences may be requested from the court if the parties certify that: (1) settlement negotiations between the parties have been pursued, demands and offers have been tendered in good faith, and resolution has failed; (2) a judicially supervised settlement conference presents a substantial opportunity for settlement; and (3) the case has developed to a point where all parties are legally and factually prepared to present the issues for settlement consideration and further discovery for settlement purposes is not required. Refer to SDSC Local Rule 2.2.1 for more information. To schedule a settlement conference, contact the department to which your case is assigned.

**Arbitration:**  The San Diego Superior Court maintains a panel of approved judicial arbitrators who have practiced law for a minimum of five years and who have a certain amount of trial and/or arbitration experience.  Refer to SDSC Local Rules Division II, Chapter III and Code Civ. Proc. § 1141.10 et seq or contact the Arbitration Program Office at (619) 450-7300 for more information.

More information about court-connected ADR: Visit the court's ADR webpage at www.sdcourt.ca.gov/adr or contact the court's Mediation/Arbitration Office at (619) 450-7300.

**Dispute Resolution Programs Act (DRPA) funded ADR Programs:**  The following community dispute resolution programs are funded under DRPA (Bus. and Prof. Code §§ 465 et seq.):
- In Central, East, and South San Diego County, contact the National Conflict Resolution Center (NCRC) at www.ncrconline.com or (619) 238-2400.
- In North San Diego County, contact North County Lifeline, Inc. at www.nclifeline.org or (760) 726-4900.

**Private ADR:**  To find a private ADR program or neutral, search the Internet, your local telephone or business directory, or legal newspaper for dispute resolution, mediation, settlement, or arbitration services.

## Legal Representation and Advice

To participate effectively in ADR, it is generally important to understand your legal rights and responsibilities and the likely outcomes if you went to trial. ADR neutrals are not allowed to represent or to give legal advice to the participants in the ADR process. If you do not already have an attorney, the California State Bar or your local County Bar Association can assist you in finding an attorney. Information about obtaining free and low cost legal assistance is also available on the California courts website at *www.courtinfo.ca.gov/selfhelp/lowcost*.

# EXHIBIT 7

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | | FOR COURT USE ONLY |
|---|---|---|
| STREET ADDRESS: | 330 W. Broadway | |
| MAILING ADDRESS: | 330 W. Broadway | |
| CITY AND ZIP CODE: | San Diego, 92101 | |
| BRANCH NAME: | Central | |

PLAINTIFF(S):  Lawrence Klein

DEFENDANT(S):  Microsoft Corporation

SHORT TITLE: KLEIN VS MICROSOFT CORPORATION

| **STIPULATION TO USE ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER: 25CU041477C |
|---|---|

Judge:  GREGORY W. POLLACK                        Department:  C-71

The parties and their attorneys stipulate that the matter is at issue and the claims in this action shall be submitted to the following alternative dispute resolution (ADR) process.  Selection of any of these options will not delay any case management timelines.

☐  Mediation (court-connected)

☐  Mediation (private)

☐  Voluntary settlement conference (private)

☐  Neutral evaluation (private)

☐  Other (*specify e.g., private mini-trial, private judge, etc.*): _____

☐  Non-binding private arbitration

☐  Binding private arbitration

☐  Non-binding judicial arbitration (discovery until 15 days before trial)

☐  Non-binding judicial arbitration (discovery until 30 days before trial)

It is also stipulated that the following shall serve as arbitrator, mediator or other neutral: (Name)_____

Alternate neutral (for court Civil Mediation Program and arbitration only): _____

Date: _____                        Date: _____

_____                        _____
Name of Plaintiff                                                Name of Defendant

_____                        _____
Signature                                                        Signature

_____                        _____
Name of Plaintiff's Attorney                                Name of Defendant's Attorney

_____                        _____
Signature                                                        Signature

If there are more parties and/or attorneys, please attach additional completed and fully executed sheets.

It is the duty of the parties to notify the court of any settlement pursuant to Cal. Rules of Court, rule 3.1385.  Upon notification of the settlement, the court will place this matter on a 45-day dismissal calendar.

No new parties may be added without leave of court.

**IT IS SO ORDERED.**

Dated: 08/08/2025

_____
JUDGE OF THE SUPERIOR COURT

# EXHIBIT 8

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego

**9/11/2025 12:55:12 PM**

Clerk of the Superior Court
By T. Automation          ,Deputy Clerk

**POS-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>CounselOne, PC<br>Justin Kachadoorian SBN 260356<br>9465 Wilshire Blvd, Suite 300<br>Beverly Hills, CA 90212<br>TELEPHONE NO: (310) 277-9945     FAX NO *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*: justin@counselonegroup.com<br>ATTORNEY FOR *(Name)*: Plaintiff | *FOR COURT USE ONLY* |

| |
|---|
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF   San Diego<br>STREET ADDRESS: 330 W. Broadway<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, 92101-3409<br>BRANCH NAME: Central - Civil |

| | |
|---|---|
| PLAINTIFF / PETITIONER:  Lawrence Klein<br>DEFENDANT / RESPONDENT:  Microsoft Corporation, et al. | CASE NUMBER:<br>25CU041477C |

| | |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.:<br>14081907 (26232124) |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. ☒ Summons
   b. ☒ Complaint
   c. ☒ Alternative Dispute Resolution (ADR) Package
   d. ☐ Civil Case Cover Sheet *(served in complex cases only)*
   e. ☐ Cross-Complaint
   f. ☒ Other *(specify documents)*:   Notice of Case Assignment and Case Management Conference, Stipulation to Use Alternative Dispute Resolution
3. a. Party served *(specify name of party as shown on documents served)*:
      Microsoft Corporation
   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      CSC Lawyers Incorporating Service - Rebecca Vang - Person Authorized to Accept Service of Process
4. Address where the party was served:
   2710 Gateway Oaks Dr Suite 150N, Sacramento, CA 95833
5. I served the party *(check proper box)*
   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date)*: Mon, Sep 08 2025     (2) at *(time)*: 01:29 PM
   b. ☐ **by substituted service.** On *(date)*:               at *(time)*:               I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.
      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.
      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.
      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date)*:
         from *(city)*:                                          or ☐ a declaration of mailing is attached.
      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Page 1 of 2<br>Code of Civil Procedure, § 417.10 |

| PLAINTIFF / PETITIONER: Lawrence Klein | CASE NUMBER: |
| DEFENDANT / RESPONDENT: Microsoft Corporation, et al. | 25CU041477C |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,
    (1) on *(date)*:           (2) from *(city)*:
    (3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed Notice and Acknowledgement of Receipt.)* (Code Civ. Proc., § 415.30.)
    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)
d. ☐ **by other means** *(specify means of service and authorizing code section)*:

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
a. ☐ as an individual defendant.
b. ☐ as the person sued under the fictitious name of *(specify)*:
c. ☐ as occupant.
d. ☒ On behalf of *(specify)*:  Microsoft Corporation
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| ☐ other: | |

7. **Person who served papers**
a. Name:          Brandon Ortiz
b. Address:       1400 North McDowell Blvd Suite 300, Petaluma, CA  94954
c. Telephone number:  800-938-8815
d. **The fee** for service was:  $50.00
e. I am:
    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☒ a registered California process server:
        (i) ☐ owner ☐ employee ☒ independent contractor
        (ii) Registration No:  2012-037
        (iii) County:  Sacramento

8. ☒ I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    or
9. ☐ I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date:  September 9, 2025

Brandon Ortiz
_____
(NAME OF PERSON WHO SERVED PAPERS / SHERIFF OR MARSHAL)

InfoTrack US, Inc. - P000634
1400 North McDowell Blvd Suite 300,
Petaluma, CA  94954
800-938-8815

_____
(SIGNATURE)

# EXHIBIT 9

## Case Details

| Case Number | 25CU041477C |
|---|---|
| Case Title | Klein vs Microsoft Corporation |
| Case Category | Civil |
| Case Type | (U)Business Tort/Unfair Business Practice |
| Case Status | Pending |
| Date Filed | 08/07/2025 |
| Case Age | 60 |
| Location | Central |
| Judicial Officer | POLLACK, GREGORY W. |

## Case Parties

| Name | Role | Representation |
|---|---|---|
| Klein, Lawrence | Plaintiff | Orshansky, Anthony J |
| Microsoft Corporation | Defendant | |

Showing 1 to 2 of 2 entries          First    Previous    1    Next    Last

## Representation

| Name | Address | Phone Number |
|---|---|---|
| Orshansky, Anthony J | CounselOne, PC, 9465 Wilshire BLVD Suite 300, Beverly Hills, CA 90212 | 310-277-9945 |

Showing 1 to 1 of 1 entries          First    Previous    1    Next    Last

## Future Hearings

| Hearing Date and Time | Hearing Department | Hearing Type / Comments |
|---|---|---|
| 1/9/2026 01:30 PM | Department: C-71 | Case Management Conference |

Showing 1 to 1 of 1 entries          First    Previous    1    Next    Last

## Register of Actions

All Entries    ROA Entries    Filing Entries

Search: [_____]          First    Previous    1    Next    Last

**Documents**
Select All    Clear All

| ROA Number | Event Date | Event Type / Comments | Documents |
|---|---|---|---|
| 10 | 9/11/2025 | Proof of Service of Summons - Personal<br>Proof of Service of Summons Filed by Lawrence Klein<br>Filed By: *Plaintiff* Klein, Lawrence | ☐ Preview Proof of Service of Summons - Personal (Proof of Service of Summons)<br>• Page Count: 2 |
| 9 | 8/8/2025 | System Generated Notice E-mailed<br>lanie@counselonegroup.com | N/A |
| 8 | 8/8/2025 | System Generated Notice E-mailed<br>lanie@counselonegroup.com | N/A |

| ROA Number | Event Date | Event Type / Comments | Documents |
|---|---|---|---|
| 7 | 8/8/2025 | System Generated Notice E-mailed<br>lanie@counselonegroup.com | N/A |
| 3 | 8/8/2025 | Stipulation to Alternative Dispute Resolution Process | ☐ Preview Stipulation to Alternative Dispute Resolution Process SD<br>• Page Count: 1 |
| 2 | 8/8/2025 | Notice to Litigants | ☐ Preview Notice to Litigants SD<br>• Page Count: 2 |
| 1 | 8/8/2025 | Notice of Case Assignment | ☐ Preview Notice of Case Assignment SD<br>• Page Count: 2 |
| 6 | 8/7/2025 | Civil Case Cover Sheet<br>Filed By: *Plaintiff* Klein, Lawrence | ☐ Preview Civil Case Cover Sheet<br>• Page Count: 2 |
| 5 | 8/7/2025 | Summons (Civil)<br>Filed By: *Plaintiff* Klein, Lawrence<br>Refers To: *Defendant* Microsoft Corporation | ☐ Preview Summons (Civil)<br>• Page Count: 1 |
| 4 | 8/7/2025 | Complaint (Unlimited)<br>Filed By: *Plaintiff* Klein, Lawrence<br>Refers To: *Defendant* Microsoft Corporation | ☐ Preview Complaint (Unlimited)<br>• Page Count: 25 |

Showing 1 to 10 of 10 entries

First    Previous    | 1 |    Next    Last

[ Printable ROA ]                                                          [ Add to Cart ]

**THE INFORMATION IN THIS REGISTER OF ACTIONS IS PROVIDED AS IS, WITHOUT WARRANTY BY THE SAN DIEGO SUPERIOR COURT AS TO CONTENT OR ACCURACY OF THE INFORMATION.** The Entry Date on the Register of Actions may not always reflect the actual filing date of a document and not all documents filed with the Court are listed on the Register of Actions. It is recommended that users refer to the case file for confirmation.

© 2021 - San Diego Superior Court

# PROOF OF SERVICE BY MAIL AND EMAIL

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Davis Wright Tremaine LLP, 27th Floor, 350 South Grand Avenue, Los Angeles, California 90071.

On October 7, 2025, I served the foregoing document(s) described as:

**DEFENDANT MICROSOFT CORPORATION'S NOTICE OF REMOVAL**

by placing a **true copy** of said document(s) enclosed in a sealed envelope(s) for each addressee named below, with the name and address of the person served shown on the envelope as follows:

| | |
|---|---|
| Anthony J. Orshansky<br>Alexandria Kachadoorian<br>Justin Kachadoorian<br>**CounselOne, P.C.**<br>9465 Wilshire Blvd., Suite 300<br>Beverly Hills, CA 90212<br>***Attorneys for Plaintiff Lawrence Klein*** | Email:<br>anthony@counselonegroup.com<br>alexandria@counselonegroup.com<br>justin@counselonegroup.com |

__X__ (VIA U.S. MAIL) on October 7, 2025, I placed such envelope(s) with postage thereon fully prepaid for deposit in the United States Mail in accordance with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service. I am familiar with the office practice of Davis Wright Tremaine LLP, for collecting and processing correspondence for mailing with the United States Postal Service, which practice is that when correspondence is deposited with the Davis Wright Tremaine LLP, personnel responsible for delivering correspondence to the United States Postal Service, such correspondence is delivered to the United States Postal Service that same day in the ordinary course of business.

__X__ (VIA ELECTRONIC MAIL) – I served a true and correct copy by electronic delivery pursuant to C.C.P. 1010.6, calling for agreement to accept service by electronic delivery, to the interested parties in this action as indicated above.

Executed on October 7, 2025, at Los Angeles, California.

☐ State    I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

☒ Federal    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made

| | |
|---|---|
| _____Anna Jimenez_____<br>Print Name | _____<br>Signature |

**DAVIS WRIGHT TREMAINE** LLP<br>350 SOUTH GRAND AVENUE, 27TH FLOOR<br>LOS ANGELES, CALIFORNIA 90071<br>(213) 633-6800<br>Fax: (213) 633-6899